UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

--------------------------------------------------------------------- x

In re:                                                    )
                                                          )        Chapter 11
**RICHFIELD EQUITIES, L.L.C.,**[1]                        )        Case No. 12-33788
    a Michigan limited liability company,          )        Hon. Daniel S. Opperman
                                                          )
                Debtor.               )        *Jointly Administered*

--------------------------------------------------------------------- x

### NOTICE OF FILING OF *CORRECTED* EXHIBITS 1-A AND 1-B TO:

**MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION FOR ENTRY OF:**

(I)      A "SALE PROCEDURES ORDER" (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF CERTAIN OF THE DEBTORS' ASSETS, (B) APPROVING CERTAIN BIDDING PROTECTIONS, (C) APPROVING THE FORM AND MANNER OF NOTICE OF THE BIDDING PROCEDURES HEARING, THE AUCTION AND THE SALE HEARING, (D) APPROVING THE FORM AND MANNER OF NOTICE OF THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (E) SCHEDULING AN AUCTION AND THE SALE HEARING; AND

(II)    A "SALE APPROVAL ORDER" AUTHORIZING (A) THE SALE OF SUCH ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES, AND (B) THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**(Halton Sale)[Docket No. 109]**

The above-captioned debtors (collectively, the "Debtors") hereby submit the

attached ***CORRECTED*** Exhibits 1-A and 1-B:

| Exhibit 1-A | Proposed Bidding Procedures Order |
|---|---|
| Exhibit 1-B | Proposed Sale Approval Order |

---

[1] The Debtors in this jointly administered bankruptcy proceeding are: Richfield Equities, L.L.C., Case No. 12-33788; Richfield Landfill, Inc., Case No. 12-33789; Richfield Management, L.L.C., Inc., Case No. 12-33790; and Waste Away Disposal, L.L.C., Case No. 12-33791.

1

to *MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION FOR ENTRY OF: (I) A "SALE PROCEDURES ORDER" (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF CERTAIN OF THE DEBTORS' ASSETS, (B) APPROVING CERTAIN BIDDING PROTECTIONS, (C) APPROVING THE FORM AND MANNER OF NOTICE OF THE BIDDING PROCEDURES HEARING, THE AUCTION AND THE SALE HEARING, (D) APPROVING THE FORM AND MANNER OF NOTICE OF THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (E) SCHEDULING AN AUCTION AND THE SALE HEARING; AND (II) A "SALE APPROVAL ORDER" AUTHORIZING (A) THE SALE OF SUCH ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES, AND (B) THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES* [DN 109] (the "Halton Sale Motion").  The corrected exhibits attached hereto **should replace** the incorrect versions of the Orders that were inadvertently attached to the Halton Sale Motion as originally filed with the Court at Docket No. 109.

October 16, 2012

**CARSON FISCHER, P.L.C.**

*/s/ Christopher A. Grosman*

Joseph M. Fischer (P13452)
Robert A. Weisberg (P26698)
Christopher A. Grosman (P58693)
4111 Andover Road
West - Second Floor
Bloomfield Hills, Michigan  48302
Telephone:  (248) 644-4840
Facsimile: (248) 644-1832
E-mail:  JFischer@CarsonFicher.com
       RWeisberg@CarsonFischer.com
       CGrosman@CarsonFischer.com

*Counsel for the Debtor*

**Exhibit 1-A**

**(Proposed Bidding Procedures Order)**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---------------------------------------------------------------- x
In re:                                          )
                                                )    Chapter 11
**RICHFIELD EQUITIES, L.L.C.,[1]**              )    Case No. 12-33788
    a Michigan limited liability company,    )    Honorable Daniel S. Opperman
                                                )
              Debtor.    )    *Jointly Administered*
---------------------------------------------------------------- x

**ORDER (A) APPROVING AND AUTHORIZING BIDDING PROCEDURES
WITH STALKING HORSE AND BID PROTECTIONS IN CONNECTION
WITH THE SALE OF THE SALE ASSETS; (B) APPROVING THE FORM
AND MANNER OF NOTICE OF THE SALE BY AUCTION AND SALE
HEARING; AND (C) SCHEDULING THE SALE HEARING AND
OTHER RELATED DATES AND DEADLINES**

**(the "Halton Sale")**

Upon the motion [Docket No. ___] (the "Motion")[2] filed by the above-captioned

debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this

"Order"):   (a) authorizing and approving bidding procedures with stalking horse bid

protections in connection with the sale of the Sale Assets; (b) approving the form and

manner of notice of the auction by sale, sale hearing, and assumption and assignment of

the Assumed Contracts; and (c) scheduling the sale hearing and setting other related

dates and deadlines, pursuant to sections 105(a), 363, and 365 of chapter 11 of title 11 of

---

[1] The Debtors in this jointly administered bankruptcy proceeding are: Richfield Equities,
L.L.C., Case No. 12-33788; Richfield Landfill, Inc., Case No. 12-33789; Richfield
Management, L.L.C., Inc., Case No. 12-33790; and Waste Away Disposal, L.L.C., Case
No. 12-33791.

[2] All capitalized terms used but not defined herein shall have the meanings ascribed to
them in the APA (as defined herein) and the Motion, as applicable.

the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, and 6006 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 6004-1 and

9006-1 of the Local Bankruptcy Rules for the Eastern District of Michigan (the

"Local Rules"); and the Court having found that it has jurisdiction over this matter

pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of

this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408

and 1409; and the Court having found that the relief requested in the Motion is in the

best interests of the Debtors' estates, their creditors, and other parties in interest; and

the Court having found that the Debtors provided appropriate notice of the Motion and

the opportunity for a hearing on the Motion under the circumstances; and the Court

having reviewed the Motion; and the Court having determined that the legal and

factual bases set forth in the Motion establish just cause for the relief granted herein;

and upon all of the proceedings, arguments and evidence had before the Court; and

after due deliberation and sufficient cause appearing therefor,

<div align="center">IT IS HEREBY FOUND AND DETERMINED THAT: [3]</div>

    A.     <u>Bidding Procedures</u>.    The Debtors have articulated good and

sufficient reasons for authorizing and approving the bidding procedures attached

---

[3]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

hereto as **Exhibit A** (the "Bidding Procedures"), which are fair, reasonable, and appropriate under the circumstances and designed to maximize the recovery on, and realizable value of, the Sale Assets.

        B.    Stalking Horse Bid Protections. The Debtors have demonstrated a compelling and sound business justification for authorizing the payment of the Breakup Fee, setting the bid increments, and any other obligations pursuant to the APA (collectively, the "Bid Protections"), as applicable, to the Stalking Horse Bidder under the circumstances, including, without limitation, that:

      (i)    the Bid Protections are the product of negotiations among the Debtors and the Stalking Horse Bidder conducted in good faith and at arm's-length, and the APA (including the Bid Protections) is the culmination of a process undertaken by the Debtors and their professionals to negotiate a transaction with a bidder who was prepared to pay the highest or otherwise best purchase price to date for the Sale Assets in order to maximize the value of the Debtors' estates;

      (ii)    the Bid Protections are an actual and necessary cost and expense of preserving the respective Debtors' estates;

      (iii)    the Bid Protections are fair, reasonable, and appropriate in light of, among other things, the size and nature of the proposed sale under the APA, the substantial efforts that have been and will be expended by the Stalking Horse Bidder, notwithstanding that the proposed sale is subject to higher or better offers, and the substantial benefits the Stalking Horse Bidder has provided to the Debtors, their estates, and creditors and all parties in interest herein, including, among other things, by increasing the likelihood that the best possible price for the Sale Assets will be received;

      (iv)    the protections afforded to the Stalking Horse Bidder by way of the Bid Protections were material inducements for, and express conditions of, the Stalking Horse Bidder's willingness to enter into the APA, and were necessary to

3

ensure that the Stalking Horse Bidder would continue to pursue the proposed acquisition on terms acceptable to the Debtors in their sound business judgment, subject to competitive bidding; and

(v)     the assurance of the payment of the Bid Protections has promoted more competitive bidding by: (a) inducing the Stalking Horse Bidder's bid, which otherwise would not have been made, and without which competitive bidding would be limited, and which may be the highest or best available offer for the Sale Assets; (b) inducing the Stalking Horse Bidder to conduct due diligence with respect to the Sale Assets; and (c) inducing the Stalking Horse Bidder to propose the sale contemplated by the APA, including, among other things, submission of a bid that will serve as a minimum or floor bid on which all other bidders can rely, thereby increasing the likelihood that the final purchase price reflects the true value of the Sale Assets.

C.     <u>Sale Notice</u>. The Sale Notice, substantially in the form attached hereto as **Exhibit B**, is reasonably calculated to provide all interested parties with timely and proper notice of the proposed sale, including, without limitation: (i) the date, time, and place of the Auction (if one is held); (ii) the Bidding Procedures and certain dates and deadlines related thereto; (iii) the objection deadline for the sale motion and the date, time, and place of the Sale Hearing; (iv) reasonably specific identification of the Sale Assets and Assumed Contracts; (v) the proposed assumption and assignment of the Assumed Contracts and all related cure amounts; (vi) instructions for promptly obtaining a copy of the APA; (vii) representations describing the sale as being free and clear of liens, claims, interests, and other encumbrances, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the sale proceeds; and (viii) the commitment by the Stalking Horse Bidder to assume certain

4

liabilities of the Debtors pursuant to the APA (or to another Successful Bidder arising from the Auction, if any) and the right, procedures, and deadlines for objecting thereto, and no other or further notice of the sale shall be required.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1. The Motion is granted to the extent set forth herein.

### Important Dates and Deadlines

2. **Sale Hearing**. [_____], 2012, at __:__ _.m. (prevailing Eastern Time), is the date and time the sale hearing (the "Sale Hearing") will be held before the Honorable Daniel S. Opperman, United States Bankruptcy Judge for the Bankruptcy Court for the Eastern District of Michigan, Southern Division, [_____], Michigan 48502. Any obligations of the Debtors set forth in the APA that are intended to be performed prior to the Sale Hearing and/or entry of the Sale Order pursuant to the APA are authorized as set forth herein and are fully enforceable as of the date of entry of this Order. **Please take notice that**: the Sale Hearing may be adjourned without further notice other than by announcement in open Court, on the Court's calendar or by filing of a notice on the official docket of these chapter 11 cases.

3. **Sale Objection Deadline**. [_____], 2012, at __:__ _.m. (prevailing Eastern Time), is the deadline to object to entry of the proposed Sale Order, including the sale of the Sale Assets and assumption and assignment of the Assumed Contracts (the "Sale Objection Deadline"). Objections, if any, **must**: (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules and the Local Bankruptcy Rules;

5

(iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (iv) be filed with the Court and served so *actually received* no later than the Sale Objection Deadline by the following parties (the "Notice Parties"):

| Debtors | Counsel to Debtors |
|---|---|
| Richfield Equities, L.L.C.<br>1606 E. Webster Road<br>Flint, Michigan 48505<br>Attn: Jeffrey M. Beard | Carson Fischer PLC<br>4111 Andover Road West, Second Floor<br>Bloomfield Hills, Michigan 48302<br>Attn.: Joseph M Fischer, Robert A. Weisberg and<br>Christopher A. Grosman |
| **Counsel to the Stalking Horse Bidder** | **United States Trustee** |
| Dickinson Wright PLLC<br>500 Woodward Avenue<br>Suite 4000<br>Detroit, MI 48226<br>Attn: James A. Plemmons<br><br>Hodgson Russ LLP<br>The Guaranty Building<br>140 Pearl Street<br>Suite 100<br>Buffalo, NY 14202<br>Attn: Gary M. Graber | Office of the United States Trustee<br>211 West Fort Street Suite 700<br>Detroit, MI 48226<br>Attn.: Claretta Evans |
| **Counsel to the Debtors' Postpetition Lenders** | |
| Ralph E. McDowell<br>Bodman PLC<br>6th Floor at Ford Field<br>1901 St. Antoine Street<br>Detroit, Michigan 48226 | |

**The failure to timely file an objection in accordance with this Order shall forever bar the assertion of any objection to the Motion, entry of the Sale Order, assumption and assignment of the Assumed Contracts, and/or consummation of the sale with the Stalking Horse Bidder (or other Successful Bidder at the Auction) pursuant to the APA, and shall be deemed to constitute any such party's consent to entry of the Sale Order and consummation of the sale and all transactions related thereto.**

4.    **Response Deadline**.    [_____], 2011, at __:__ _.m. (prevailing Eastern Time), is the deadline for filing a response to any timely-filed objection to entry

of the Sale Order with the Court; *provided*, that such deadline may be extended by agreement of the Debtors and the affected objecting party.

5. **Competitive Bidding**. The following dates and deadlines regarding competitive bidding are hereby established (subject to modification as needed):

(i) **Qualified Bid Deadline**: [_____], 2012, at __:__ _.m. (prevailing Eastern Time), is the deadline by which all "Qualified Bids" (as defined in the Bidding Procedures) must be *actually received* by the parties specified in the Bidding Procedures (the "Bid Deadline"); and

(ii) **Auction**: [_____], 2012, at __:__ _.m. (prevailing Eastern Time), is the date and time the Auction, if one is needed, will be held at the offices of counsel to the Debtors: [____].

### Bidding Procedures and Related Relief

6. The Bidding Procedures, substantially in the form attached hereto as **Exhibit A** and incorporated by reference as though fully set forth herein, are hereby approved to the extent set forth herein. The Bidding Procedures shall govern the submission, receipt, and analysis of all bids relating to the proposed sale, and any party desiring to submit a higher or better offer for the sale of the Sale Assets shall do so strictly in accordance with the terms of the Bidding Procedures and this Order.

7. As described in the Bidding Procedures, if the Debtors do not receive any Qualified Bids other than from the Stalking Horse Bidder, or if no Qualified Bidder other than the Stalking Horse Bidder indicates its intent to participate in the Auction, the Debtors will not hold the Auction, the Stalking Horse Bidder will be named the Successful Bidder, and the Debtors will seek approval of the APA at the Sale

7

Hearing. If one or more Qualified Bids are timely received from a Qualified Bidder (other than the Stalking Horse Bidder) in accordance with the Bidding Procedures, the Debtors shall conduct the Auction as set forth herein.

8. If the Auction is conducted, each Qualified Bidder participating in the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding process or the sale, the Auction will be conducted openly, and the Auction may be transcribed.

9. The Bid Protections described in the Motion and set forth in the APA are hereby approved to the extent set forth herein.

10. If the Stalking Horse Bidder becomes entitled to receive certain of the Bid Protections in accordance with the terms of the APA: (i) the Debtors are authorized and obligated to pay any and all amounts owing to the Stalking Horse Bidder in accordance with the terms of the APA, including the Breakup Fee, as applicable, without further action or order by the Court, in accordance with the terms and conditions of the APA and this Order; and (ii) the Stalking Horse Bidder shall be, and hereby is, granted an allowed administrative claim in the Debtors' chapter 11 cases in an amount equal to the Breakup Fee, as applicable, under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code, and senior to all other administrative expense claims, provided however, that the Breakup Fee may only be paid from the proceeds of a sale of the Sale Assets to someone other than Stalking Horse Bidder.

11. No person or entity, other than the Stalking Horse Bidder, shall be entitled to any expense reimbursement, break-up fee, termination, or other similar fee or payment pursuant to this Order.

12. The Bid Procedures may be modified with the Stalking Horse Bidder's consent.

## Sale Hearing Notice and Related Relief

13. The Sale Notice, substantially in the form attached hereto as **Exhibit B** is hereby approved. Within two (2) business days of entry of this Order, the Debtors shall cause the Sale Notice to be served upon, without limitation, (i) those parties included on the Debtors' Court approved Special Service Matrix and available on the Debtors' case website at www.kccllc.net/richfield), (ii) all entities known or reasonably believed to have asserted a lien, encumbrance, claim, or other interest in the Sale Assets, (iii) all affected federal, state, and local regulatory and taxing authorities, and (iv) all entities known or reasonably believed to have expressed an interest in acquiring the Sale Assets.

14. The Assumption Notice, substantially in the form attached hereto as **Exhibit C** is hereby approved. Within five (5) business days of entry of this Order, the Debtors shall cause the Assumption Notice to be served upon, without limitation, (i) those parties included on the Debtors' Court approved Special Service Matrix and available on the Debtors' case website at www.kccllc.net/richfield), (ii) all entities known or reasonably believed to have asserted a lien, encumbrance, claim, or other interest in the Sale Assets, (iii) all affected federal, state, and local regulatory and taxing

9

authorities, (iv) all entities known or reasonably believed to have expressed an interest in acquiring the Sale Assets, and (v) all non-debtor parties to the Assumed Contracts.

**<u>Other Relief</u>**

15.     The Debtors are authorized to execute and deliver all instruments and documents, and take such other action as may be necessary or appropriate to implement and effectuate the transactions contemplated by this Order.

16.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

17.     Notwithstanding Bankruptcy Rules 6004(a) and 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

18.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

19.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

## EXHIBIT A

**Bidding Procedures**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

```
------------------------------------------------------------------ x
```
In re:                                    )
                                          )     Chapter 11
**RICHFIELD EQUITIES, L.L.C.,**[1]         )     Case No. 12-33788
    a Michigan limited liability company,  )     Honorable Daniel S. Opperman
                                          )
              Debtor.  )     *Jointly Administered*
```
------------------------------------------------------------------ x
```

## BIDDING PROCEDURES FOR THE SUBMISSION, RECEIPT, AND ANALYSIS OF BIDS IN CONNECTION WITH THE SALE OF THE APPLICABLE CONTRACTS

### (the "<u>Halton Sale</u>")

     The bidding procedures (the "<u>Bidding Procedures</u>") have been approved by an order of the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division (the "<u>Court</u>") entered on [_____], 2012 [Docket No. ___] (the "<u>Bidding Procedures Order</u>") on the docket of the lead case in the above-captioned jointly administered cases of Richfield Equities, L.L.C. and certain of its affiliates (collectively, the "<u>Debtors</u>").

     The Bidding Procedures set forth the process by which the Debtors are authorized to conduct the sale (the "<u>Sale</u>") by auction (the "<u>Auction</u>") of a portion of the Debtors assets, properties and rights used in the operation of their business (defined as the "<u>Sale Assets</u>" in the Asset Purchase Agreement, dated as of _____, 2012, between Halton Recycling Ltd., on behalf of one or more affiliated U.S. business entities to be formed (the "<u>Stalking Horse Bidder</u>")) and Richfield Equities, L.L.C., Richfield Management, L.L.C. and Waste Away Disposal, L.L.C. (the "<u>Stalking Horse APA</u>") pursuant to the terms and conditions substantially in the form of the Stalking Horse APA. *Please take notice that* all capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Stalking Horse APA.

---

[1] The Debtors in this jointly administered bankruptcy proceeding are: Richfield Equities, L.L.C., Case No. 12-33788; Richfield Landfill, Inc., Case No. 12-33789; Richfield Management, L.L.C., Inc., Case No. 12-33790; and Waste Away Disposal, L.L.C., Case No. 12-33791.

Copies of the Bidding Procedures Order, Stalking Horse APA, or other documents related thereto are available upon request to Kurtzman Carson Consultants LLC by calling (866) 967-0498, or visiting the Debtors' restructuring website at http://www.kccllc.net/richfield.

A.    **Assets to be Sold**.

The Bidding Procedures set forth the terms by which prospective bidders, if any, may qualify for and participate in the Auction, thereby competing to make the highest or otherwise best offer for the Sale Assets (including the Assumed Contracts).

B.    **Stalking Horse Bidder**.

On [_____], 2012, the Debtors and the Stalking Horse Bidder entered into the Stalking Horse APA for the sale of the Sale Assets pursuant to which:  (a) the Stalking Horse Bidder agreed to pay $5,000,000 (the "Stalking Horse Bid") for the Sale Assets, subject to the outcome of the Auction and Bankruptcy Court approval; (b) the Debtors agreed, in part, upon the date the Debtors consummate a sale or transfer or assignment of the Sale Assets to an entity other than the Stalking Horse Bidder, the Debtors shall immediately pay to the Stalking Horse Bidder in cash, by wire transfer of immediately available funds to an account designated in writing by Stalking Horse Bidder, (A) a breakup fee in an amount equal to two hundred thousand dollars ($200,000) (the "Breakup Fee").

C.    **Participation and Bid Requirements.**

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person (other than the Stalking Horse Bidder) interested in the Sale Assets (a "Potential Bidder") must, on or before [_____], 2012, deliver (unless previously delivered) to each of (a) counsel to the Debtors, Carson Fischer PLC, 4111 Andover Road West, Second Floor, Bloomfield Hills, Michigan 48302, Attn.:  Joseph M Fischer, Robert A Weisberg and Christopher A Grosman; (b) counsel to the Stalking Horse Bidder, Dickinson Wright PLLC, 500 Woodward Avenue, Suite 4000, Detroit, MI 48226 Attn:  James A. Plemmons; (c) [_____]; (collectively, the "Notice Parties"), the following documents (the "Bid Documents") to participate in the bidding process:

a.    an executed confidentiality agreement (the "Confidentiality Agreement") reasonably acceptable to the Debtors and containing terms in the aggregate no less favorable to the Debtors in any material respect (other than with respect to the effective periods and the non-disclosure and non-solicitation provisions contained therein, all of which terms shall be commercially reasonable) than those contained in the confidentiality agreement by and among the

Stalking Horse Bidder, the Debtors, and certain of their respective affiliates;

b.    an irrevocable good faith, bona fide offer for at least $5,300,000 to purchase all of the Sale Assets that (i) identifies with particularity each and every condition to closing, including the executory contracts and unexpired leases for which assumption and assignment is required, (ii) is not be conditioned on any contingency, including, among others, on obtaining any of the following: (A) financing; (B) shareholder, board of directors, or other approval; or (C) the outcome or completion of a due diligence review by the Potential Bidder, (iii) must remain irrevocable until the Bankruptcy Court enters and order approving the Successful Bid and (iv) provides the Debtors, on or before the Bid Deadline, with sufficient and adequate information to demonstrate, to the satisfaction of the Debtors, that such Potential Bidder has the financial wherewithal and ability to consummate the acquisition of the Sale Assets;

c.    a clean and a duly executed purchase and sale agreement, substantially in the form of the Stalking Horse APA, and the documents set forth as schedules and exhibits thereto, along with copies that are marked to reflect the amendments and modifications from the Stalking Horse APA executed with Stalking Horse Bidder, which may not be materially more burdensome to the Debtors or otherwise inconsistent with the Bidding Procedures;

d.    written disclosure of the identity of each entity that will be bidding for or purchasing the Sale Assets or otherwise participating in connection with such bid, and the complete terms of any such participation, along with sufficient evidence that the Acceptable Bidder is legally empowered, by power of attorney or otherwise, to complete the transactions on the terms contemplated by the parties; and

e.    written proof by the Potential Bidder of its financial capacity to close a proposed transaction, which may include current unaudited or verified financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach), the adequacy of which the Debtors and its advisors will determine.

3

In addition to the above, each Potential Bidder (other than the Stalking Horse Bidder) shall:

> f.    on or before the Bid Deadline, submit a cash deposit equal to five hundred thousand dollars ($500,000) by wire transfer of immediately available funds to an account or accounts designated by the Debtors (the "Good Faith Deposit"); and

> g.    not be entitled to any break-up fee, transaction fee, termination fee, expense reimbursement, or any similar type of payment or reimbursement.

Bids fulfilling all of the preceding requirements may, at the Debtors' sole discretion, be deemed to be "Qualified Bids," and those parties submitting Qualified Bids may, at the Debtors' sole discretion, be deemed to be "Qualified Bidders" [who are eligible to conduct a due diligence review with respect to the Applicable Contracts.] Within two Business Days after the Bid Deadline, the Debtors shall determine which Acceptable Bidders are Qualified Bidders after consultation with their advisors and Comerica Bank will notify the Acceptable Bidders and the Stalking Horse Bidder whether bids submitted constitute Qualified Bids so as to enable such Qualified Bidders to bid at the Auction. Any bid that is not deemed a Qualified Bid shall not be considered by the Debtors. The Stalking Horse Bidder shall be deemed to be a Qualified Bidder. The Stalking Horse APA submitted by the Stalking Horse Bidder and any additional bids timely submitted by the Stalking Horse Bidder (to the extent such bids are generally consistent with the terms of the Stalking Horse APA) shall be deemed Qualified Bids, qualifying the Stalking Horse Bidder to participate in the Auction.

D.    **Obtaining Due Diligence Access.**

After receipt of an executed Confidentiality Agreement and notification of Qualified Bidder status, the Debtors shall provide each Qualified Bidder reasonable due diligence information, as requested, as soon as reasonably practicable after such request, which information shall be commensurate with that information given to the Stalking Horse Bidder. To the extent the Debtors give any information to any Qualified Bidder that they had not previously provided to the Stalking Horse Bidder, the Debtors may, at their sole discretion, provide such information to the Stalking Horse Bidder. The due diligence period will end on the Bid Deadline (as defined herein).

In connection with the provision of due diligence information to Qualified Bidders, the Debtors shall not furnish any confidential information relating to the Applicable Contracts or the Sale to any person except a Qualified Bidder or such Qualified Bidder's duly-authorized representatives to the extent provided in the applicable Confidentiality Agreement.

The Debtors along with their advisors shall coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders; *provided,* that the Debtors may decline to provide such information to Qualified Bidders who, in the Debtors' reasonable business judgment, have not established that such Qualified Bidders intend in good faith to or have the capacity to consummate the purchase of all of the Sale Assets. No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

> The Debtors designate Jeffrey Beard, Tel: (248) 244-2410, 900 Wilshire Drive, Troy, Michigan 48084, to coordinate all reasonable requests for additional information and due diligence access.

E. **Bid Deadline.**

**Binding bids must be received by the Debtors, the Stalking Horse Bidder, and all other Notice Parties, in each case so as to be actually received no later than __:__ _.m. (prevailing Eastern Time) on [_____], 2012 (the "<u>Bid Deadline</u>").**

F. **Evaluation of Qualified Bids.**

Prior to the Auction, the Debtors shall evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtors' judgment, the highest or otherwise best bid (the "<u>Starting Bid</u>"). Within 24 hours of such determination, but in no event later than one Business Day prior to the date of the Auction, the Debtors shall notify the Stalking Horse Bidder as to which Qualified Bid is the Starting Bid. The Debtors shall distribute copies of the Starting Bid to each Qualified Bidder who has submitted a Qualified Bid.

G. **No Qualified Bids.**

If no Qualified Bids are received by the Bid Deadline, then the Auction will not occur, the Stalking Horse Bidder will be deemed the Successful Bid (as defined herein), and, subject to the Debtors' termination rights under the Stalking Horse APA, the Debtors may immediately pursue entry of an order by the Bankruptcy Court approving the Stalking Horse APA and authorizing the sale and assignment of the Sale Assets to the Stalking Horse Bidder.

H. **Auction.**

If one or more Qualified Bids are received by the Bid Deadline, then the Debtors shall conduct an Auction with respect to the Sale Assets. The Auction shall commence on [_____], 2012, at __:__ _.m. (prevailing Eastern Time) at the offices of [_____], or such later time or other place as the Debtors shall timely notify the Stalking Horse Bidder and all other Qualified Bidders.

5

The Auction will be conducted in accordance with the following procedures (the "<u>Auction Procedures</u>"):

    a.    the Auction will be conducted openly;

    b.    only the Qualified Bidders, including the Stalking Horse Bidder, shall be entitled to bid at the Auction;

    c.    the Qualified Bidders, including the Stalking Horse Bidder, shall appear in person or through duly-authorized representatives at the Auction;

    d.    only such authorized representatives of each of the Qualified Bidders, the Stalking Horse Bidder, the Debtors, and all other Notice Parties shall be permitted to attend the Auction;

    e.    bidding at the Auction shall begin at the Starting Bid;

    f.    bids at the Auction (after the Starting Bid), including any bids by the Stalking Horse Bidder, shall be made in minimum increments of one hundred and thousand dollars ($100,000);

    g.    the Stalking Horse Bidder shall receive a credit equal to the sum of the Breakup Fee when bidding at the Auction;

    h.    each Qualified Bidder will be informed of the terms of the previous bids;

    i.    the bidding may be transcribed to ensure an accurate recording of the bidding at the Auction;

    j.    each Qualified Bidder will be deemed to have confirmed by participating in the Auction that it has not engaged in any collusion with respect to the bidding or the Sale;

    k.    absent irregularities in the conduct of the Auction, the Bankruptcy Court will not consider bids made after the Auction is closed;

    l.    the Auction shall be governed by such other Auction Procedures as may be announced by the Debtors, after consultation with its advisors, from time to time; *provided*, that any such other Auction Procedures shall not be inconsistent with any order of the Bankruptcy Court; and

    m.    notwithstanding anything herein to the contrary, the Debtors may at any time, and in their sole discretion, choose to cancel the

6

Auction, adjourn the Auction, or modify the Auction Procedures if necessary to comply with their fiduciary duties.

I.    **Acceptance of Successful Bid.**

Upon the conclusion of the Auction (if such Auction is conducted), the Debtors, in the exercise of their reasonable, good-faith business judgment, and after consulting with their advisors and Comerica Bank, shall identify the highest or otherwise best bid (the "Successful Bid").  The Qualified Bidder having submitted a Successful Bid will be deemed the "Successful Bidder."  The Successful Bidder and the Debtors shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which such Successful Bid was made.

If an Auction is held, the Debtors shall be deemed to have accepted a Qualified Bid only when (a) such bid is declared the Successful Bid at the Auction and (b) definitive documentation has been executed in respect thereof.  Such acceptance is conditioned upon approval by the Bankruptcy Court of the Successful Bid and entry of the Sale Order approving such Successful Bid.

J.    **Sale Hearing**

A hearing to consider approval of the Sale of the Sale Assets to the Successful Bidder (or to approve the Stalking Horse APA if no Auction is held) (the "Sale Hearing") is presently scheduled to take place on [_____], 2012, at __:__ _.m. (prevailing Eastern Time), or as soon thereafter as counsel may be heard, before the Honorable Daniel S. Opperman, United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, [_____], Michigan 48502.

**The Sale Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Sale Hearing.  No further notice of any such continuance will be required to be provided to any party.**

The Debtors will present the results of the Auction to the Bankruptcy Court at the Sale Hearing, at which certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that:  (a) the Auction was conducted, and the Successful Bidder was selected, in accordance with the Bidding Procedures; (b) the Auction was fair in substance and procedure; (c) the Successful Bid was a Qualified Bid as defined in the Bidding Procedures; and (d) consummation of the Sale contemplated by the Successful Bid will provide the highest or otherwise best value for the Sale Assets and is in the best interests of the Debtors.  In addition, the Debtors shall present the Successful Bid to the Bankruptcy Court for approval.

K.     **Breakup Fee.**

The Debtors shall be obligated to pay to the Stalking Horse Bidder, by wire transfer in immediately available funds to an account designated by the Stalking Horse Bidder, all amounts due to the Stalking Horse Bidder, including the Breakup Fee, if applicable, in each instance in accordance with the applicable provisions of the Stalking Horse APA.

L.     **Return of Good Faith Deposit.**

The Good Faith Deposit of the Successful Bidder shall, upon consummation of the purchase of the Sale Assets, be credited to the purchase price paid for the Sale Assets.  If the Successful Bidder fails to consummate the purchase of the Sale Assets, then the Good Faith Deposit shall be forfeited to, and retained irrevocably by the Debtors.

The Good Faith Deposit of any unsuccessful Qualified Bidders will be returned within 3 days after consummation of the Sale or upon the permanent withdrawal of the proposed Sale of the Sale Assets.

M.     **Reservation of Rights.**

The Debtors reserve their rights, following consultation with their advisors, to modify the Bidding Procedures in any manner, <u>provided</u> that the Stalking Horse Bidder must consent to such modification, that will best promote the goals of the bidding process or impose, at or prior to the Auction, additional customary terms and conditions on the Sale of the Sale Assets, including, without limitation, modifying the requirements for a Qualified Bid, extending the deadlines set forth in the Bidding Procedures, adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice, canceling the Auction, and rejecting any or all Qualified Bids if, in the Debtors' business judgment, following consultation with their advisors, the Debtors determine that such Qualified Bid (a) is inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code or any related rules or the terms set forth herein, or (c) contrary to the best interests of the Debtors.

The Debtors shall provide to the Stalking Horse Bidder the information and documents specified in the Stalking Horse APA relating to the Auction and other bids within the time period and on the terms and conditions set forth in the Stalking Horse APA.

Notwithstanding anything herein or in the Bidding Procedures Order to the contrary, nothing will in any way impair or enhance, alter or otherwise affect any and all rights that any party, or collateral agent may have to "credit bid" pursuant to section 363(k) of the Bankruptcy Code or other applicable law.

## EXHIBIT B

**Form of Sale Notice**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

-------------------------------------------------------------- x
In re:                             )

                                )         Chapter 11

**RICHFIELD EQUITIES, L.L.C.,[1]**      )         Case No. 12-33788

    a Michigan limited liability company,   )         Honorable Daniel S. Opperman

                                )

                 Debtor.      )         *Jointly Administered*

-------------------------------------------------------------- x

**NOTICE OF: (I) SALE BY AUCTION, (II) ASSUMPTION AND ASSIGNMENT OF
EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) SALE HEARING**

**(the "Halton Sale")**

      **PLEASE TAKE NOTICE** that on [_____], 2012, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed a motion [Docket No. ____] the ("Sale Motion") with the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division (the "Bankruptcy Court") seeking, among other things, entry of an order authorizing and approving the sale of a portion of the Debtors' assets, properties and rights used in the operation of their business (the "Sale Assets"), including the assumption and assignment of certain executory contracts and unexpired leases (the "Assumed Contracts"), free and clear of liens, claims, interests, and encumbrances to Halton Recycling Ltd., on behalf of one or more affiliated U.S. business entities to be formed (the "Stalking Horse Bidder"), subject to higher or otherwise better offers, after the auction (the "Sale"). Please note that all capitalized terms used but not defined herein have the meanings set forth in the Sale Motion.

      **PLEASE TAKE FURTHER NOTICE** that the Debtors are soliciting offers for the purchase of the Sale Assets consistent with the bidding procedures (the "Bidding Procedures") approved by the Bankruptcy Court by entry of an order dated [_____], 2012 [Docket No. ___] (the "Bidding Procedures Order"). **All interested bidders should read carefully the Bidding Procedures and Bidding Procedures Order**. To the extent that there are any inconsistencies between this notice and the Bidding Procedures, the Bidding Procedures shall govern in all respects.

      **PLEASE TAKE FURTHER NOTICE** that, if the Debtors receive qualified competing bids within the requirements and time frame specified by the Bidding Procedures, the Debtors will conduct an auction (the "Auction") of the Sale Assets on [_____], 2012, at __:__ .m. (prevailing Eastern Time) at the offices of [_____] (or at any such other location as the Debtors may hereafter designate on proper notice).

---

[1] The Debtors in this jointly administered bankruptcy proceeding are: Richfield Equities, L.L.C., Case No. 12-33788; Richfield Landfill, Inc., Case No. 12-33789; Richfield Management, L.L.C., Inc., Case No. 12-33790; and Waste Away Disposal, L.L.C., Case No. 12-33791.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Sale Motion, the Debtors intend to assume and assign the Assumed Contracts to the Stalking Horse Bidder, or such higher and better bidder at the Auction, pursuant to section 365 of the Bankruptcy Code and have provided the cure amounts that the Debtors believe must be paid to cure all pre-petition defaults under the Applicable Contracts (in each instance, the "Cure Amount").

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek approval of the Sale at a hearing scheduled to commence at [_____], 2012, at __:___.m. (prevailing Eastern Time) (the "Sale Hearing") before the Honorable Daniel S. Opperman, United States Bankruptcy Judge for the Bankruptcy Court for the Eastern District of Michigan, Southern Division, 226 West Second Street, Flint, Michigan 48502.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief requested in the Sale Motion in respect of the Sale , including the sale of the Sale Assets and the proposed assumption and assignment of the Assumed Contracts **must**:  (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (iv) be filed with the Court and served so *actually received* no later than [_____], 2012, at __:___ .m. (prevailing Eastern Time) (the "Sale Objection Deadline") by the following parties (the "Notice Parties"):

| Debtors | Counsel to Debtors |
|---|---|
| Richfield Equities, L.L.C.<br>1606 E. Webster Road<br>Flint, Michigan 48505<br>Attn: Jeffrey M. Beard | Carson Fischer PLC<br>4111 Andover Road West, Second Floor<br>Bloomfield Hills, Michigan 48302<br>Attn.:  Joseph M. Fischer and Chris Grosman |
| **Counsel to the Stalking Horse Bidder** | **United States Trustee** |
| Dickinson Wright PLLC<br>500 Woodward Avenue<br>Suite 4000<br>Detroit, MI  48226<br>Attn:  James A. Plemmons | Office of the United States Trustee<br>211 West Fort Street Suite 700<br>Detroit, MI 48226<br>Attn.:  Claretta Evans |
| Hodgson Russ LLP<br>The Guaranty Building<br>140 Pearl Street<br>Suite 100<br>Buffalo, NY  14202<br>Attn: Gary M. Graber | **Counsel to the Debtors' Postpetition Lenders** |
| | Ralph E. McDowell<br>Bodman PLC<br>6th Floor at Ford Field<br>1901 St. Antoine Street<br>Detroit, Michigan 48226 |

## CONSEQUENCES OF FAILING TO TIMELY FILE AND SERVE AN OBJECTION

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY FILE AND SERVE AN OBJECTION TO THE SALE ON OR BEFORE THE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE SALE ASSTES FREE AND CLEAR OF ALL LIENS,**

2

CLAIMS, ENCUMBRANCES, OTHER INTERESTS, THE ASSUMPTION AND ASSIGNMENT OF THE ASSUMED CONTRACTS TO THE SUCCESSFUL BIDDER AND ANY CURE AMOUNTS RELATED THERETO.

<div style="border:1px solid black">

### NO SUCCESSOR OR TRANSFEREE LIABILITY

</div>

The proposed Sale Order provides that the Buyer will have no responsibility for, and the assets will be sold free and clear of, any successor liability, including the following: (a) any liability or other obligation of the Debtors or related to the Sale Assets other than as expressly set forth in the APA, or (b) any Claims against the Debtors or any of their predecessors or affiliates. Except as expressly provided in the APA with respect to Buyer, the Buyer shall have no liability whatsoever with respect to the Debtors (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations (as described below, "Successor or Transferee Liability") based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, *de facto* merger or substantial continuity, labor and employment, or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Sale Assets prior to the Closing.

**PLEASE TAKE FURTHER NOTICE** that copies of the Sale Motion, and any exhibits thereto, including the Bidding Procedures Order, Bidding Procedures, and APA, are available (i) upon request to Kurtzman Carson Consultants LLC (the noticing and claims agent retained in these chapter 11 cases) by calling (866) 9673-0498, (ii) at the Debtors' expense by visiting the Debtors' restructuring website at http://www.kccllc.net/richfield, or (iii) for a fee via PACER by visiting http://www.mieb.uscourts.gov.

October ___, 2012

**CARSON FISCHER, P.L.C.**

/s/
_____
Joseph M. Fischer (P13452)
Robert A. Weisberg (P26698)
Christopher A. Grosman (P58693)
4111 Andover Road
West - Second Floor
Bloomfield Hills, Michigan 48302
Telephone: (248) 644-4840
Facsimile: (248) 644-1832
E-mail: JFischer@CarsonFicher.com
          RWeisberg@CarsonFischer.com
          CGrosman@CarsonFischer.com

## EXHIBIT C

**Form of Assumption Notice**

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

---------------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 12-33788 |
| **RICHFIELD EQUITIES, L.L.C.,**[1] | ) | Honorable Daniel S. Opperman |
| | ) | |
| Debtor. | ) | *Jointly Administered* |

---------------------------------------------------------------- x

### NOTICE OF: (I) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (II) PPROPOSED CURE AMOUNTS; AND (III) SALE HEARING
### (the "Halton Sale")

**PLEASE TAKE NOTICE** that:

1.        On [_____], 2012, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed a motion [DN ____] the ("Sale Motion") with the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division (the "Bankruptcy Court") seeking, among other things, entry of an order authorizing and approving the sale (the "Sale") of a portion of the Debtors' assets, properties and rights used in the operation of their business (the "Sale Assets"), including the assumption and assignment of certain executory contracts and unexpired leases (the "Assumed Contracts"), free and clear of liens, claims, interests, and encumbrances to Halton Recycling Ltd., on behalf of one or more affiliated U.S. business entities to be formed (the "Stalking Horse Bidder"), subject to higher or otherwise better offers, after the auction (the "Auction").  Please note that all capitalized terms used but not defined herein have the meanings set forth in the Sale Motion.

2.        Pursuant to the Sale Motion and related Bidding Procedures Order entered by the Bankruptcy Court on _____, 2012 [DN ___] Debtors hereby provide notice that the following unexpired leases or executory contracts[2] is one of the Assumed Contracts:

*[OPTION 1 (TO BE USED FOR "SCRIPT CUSTOMERS" ONLY)]*

| Contract Description | Cure Amount |
|---|---|
| *Agreement to Pick Up Waste and/or Recycling* | $0.00 |

---

[1] The Debtors in this jointly administered bankruptcy proceeding are: Richfield Equities, L.L.C., Case No. 12-33788; Richfield Landfill, Inc., Case No. 12-33789; Richfield Management, L.L.C., Inc., Case No. 12-33790; and Waste Away Disposal, L.L.C., Case No. 12-33791.

[2] Nothing contained herein shall be deemed an admission by the Debtor that any contract, lease or other agreement listed on Exhibit A is, in fact, an executory contract or an unexpired lease. The Debtor specifically reserves its rights to argue that any such contract, lease or other agreement is not an executory contract or unexpired lease.

| Non-Debtor Party | Contract Description | Cure Amount |
|---|---|---|
| | *See Attached Exhibit A* | |

to be assumed and assigned, pursuant to section 365 of the Bankruptcy Code to the Stalking Horse of such other purchaser (the "Successful Bidder") that submits a higher or better offer for the Sale Assets at the Auction.

3.  **All objections to the proposed assumption and assignment of the Assumed Contracts, or to the amounts listed as Cure Amounts, must be filed with the U.S. Bankruptcy Court for the Eastern District of Michigan and served so as to be actually received by the following counsel at or before _____:**

| Debtors | Counsel to Debtors |
|---|---|
| Richfield Equities, L.L.C.<br>1606 E. Webster Road<br>Flint, Michigan 48505<br>Attn: Jeffrey M. Beard | Carson Fischer PLC<br>4111 Andover Road West, Second Floor<br>Bloomfield Hills, Michigan 48302<br>Attn.: Joseph M. Fischer and Chris Grosman |
| **Counsel to the Stalking Horse Bidder** | **United States Trustee** |
| Dickinson Wright PLLC<br>500 Woodward Avenue<br>Suite 4000<br>Detroit, MI 48226<br>Attn: James A. Plemmons | Office of the United States Trustee<br>211 West Fort Street Suite 700<br>Detroit, MI 48226<br>Attn.: Claretta Evans |
| Hodgson Russ LLP<br>The Guaranty Building<br>140 Pearl Street<br>Suite 100<br>Buffalo, NY 14202<br>Attn: Gary M. Graber | **Counsel to the Debtors' Postpetition Lenders** |
| | Ralph E. McDowell<br>Bodman PLC<br>6th Floor at Ford Field<br>1901 St. Antoine Street<br>Detroit, Michigan 48226 |

4.  Any objection must state with specificity the amounts that the non-Debtor party believes are necessary to cure the defaults and compensate the party for any actual pecuniary losses resulting from the defaults with appropriate documentation in support thereof. **If no objection is timely received, the Cure Amount set forth herein shall be controlling notwithstanding anything to the contrary in any Assumed Contract and the nondebtor party to the Assumed Contract shall be forever barred from asserting any other claim arising prior to the assignment against the Debtors or the proposed purchaser as to such Assumed Contract and such non-debtor party shall be deemed to have consented to the assumption and assignment of such Asumed Contract.**

5.  There shall be a hearing commencing on _____, 2012 at ___:___ __.m. prevailing Eastern time before the Honorable Daniel S. Opperman, U.S. Bankruptcy Judge for the Eastern District of Michigan, _____ to consider approval of the Sale, assumption and assignment of the Assumed Contracts and any related objections.

2

6.  Copies of the Sale Motion, the Bidding Procedures Order, and APA, are available (i) upon request to Kurtzman Carson Consultants LLC (the noticing and claims agent retained in these chapter 11 cases) by calling (866) 9673-0498, (ii) at the Debtors' expense by visiting the Debtors' restructuring website at http://www.kccllc.net/richfield, or (iii) for a fee via PACER by visiting http://www.mieb.uscourts.gov.

October ___, 2012

**CARSON FISCHER, P.L.C.**
Joseph M. Fischer & Christopher A. Grosman
4111 Andover Road, West - Second Floor
Bloomfield Hills, Michigan 48302
Telephone: (248) 644-4840; Facsimile: (248) 644-1832
E-mail:   JFischer@CarsonFicher.com
            CGrosman@CarsonFischer.com

**Exhibit 1-B**

**(Proposed Sale Approval Order)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:

**RICHFIELD EQUITIES, L.L.C.[1],**
    a Michigan limited liability company,

    Debtor.

_____/

Case No.  12-33788
Chapter 11
Hon. Daniel S. Opperman

*Jointly Administered*

**ORDER GRANTING DEBTORS' MOTION FOR AN ORDER (A) APPROVING THE SALE OF CERTAIN ASSETS, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED NON-RESIDENTIAL REAL PROPERTY LEASES, AND (C) GRANTING CERTAIN RELATED RELIEF**

Upon Debtors' motion [Docket No.____] (the "Motion") seeking, among other things, entry of an order (i) approving the Asset Purchase Agreement dated October ___, 2012 (the "Purchase Agreement") by and among Debtors Richfield Management, L.L.C., Richfield Equities, L.L.C., and Waste Away Disposal, L.L.C. (collectively, "Debtors", and individually, "Debtor"), as the sellers, and Halton Recycling Ltd., on behalf of one or more affiliated U.S. business entities to be formed ("Buyer") for the sale of the Sale Assets (defined in the Purchase Agreement[2]) to Buyer free and clear of liens, Claims (defined below), encumbrances and other interests (the "Sale") under 11 U.S.C. §363(f), (ii) approving the assumption and assignment of the Assumed Contracts to be assumed by Debtors and assigned to Buyer under the Purchase Agreement in connection therewith under 11 U.S.C. §365, (iii) waiving the stays imposed by Federal Rules of Bankruptcy Procedure 6004(h) and 6006(d) of the Sale and the assignment of Assumed Contracts, respectively, and (iv) granting certain other related relief; the Court having entered on October ___, 2012, the Order (A) Establishing Bidding Procedures Relating to the

---

[1] The debtors in this jointly administered bankruptcy proceeding are:  Richfield Equities, L.L.C., Case No. 12-33788; Richfield Landfill, Inc., Case No. 12-33789; Richfield Management, L.L.C., Inc., Case No. 12-33790; and Waste Away Disposal, L.L.C., Case No. 12-33791.

Sale of Certain of Debtors' Assets, (B) Authorizing Debtors to Enter Into Stalking Horse Agreements in Connection With the Sale of Certain Assets, (C) Approving Break-up, (D) Scheduling a Hearing to Consider the Proposed Sale and Approving the Form and Manner of Notice Thereof, and (E) Granting Certain Related Relief (the "Bid Procedures Order"), authorizing Debtors to proceed with the bidding procedures set forth therein (the "Bid Procedures") and the form of notice of the hearing on the Motion; the Court having conducted the hearing on the Motion on _____, 2012 (the "Sale Hearing"); all parties in interest having been heard or having had the opportunity to be heard regarding approval of the Purchase Agreement, and the transaction contemplated thereby (the "Transaction"); the Court having reviewed and considered the Motion and objections thereto and arguments of counsel made and evidence produced at the Sale Hearing; it appearing that the relief requested relating to the Purchase Agreement and the Sale is in the best interest of Debtors' estates, their creditors and other parties interest; upon the record in these chapter 11 cases and these proceedings, including the record made at the Sale Hearing; after due deliberation; and good cause appears,

THE COURT FINDS, DETERMINES AND CONCLUDES THAT:

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Procedure 7052.  To the extent any of the following findings of fact are determined to be conclusions of law, they are adopted, and shall be construed and deemed, conclusions of law.  To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted, and shall be construed and deemed, as findings of fact.

---

[2] Capitalized terms not otherwise defined in this Order shall have the meaning set forth in the Purchase Agreement.

B.    The Court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. §§157 and 1334.  Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§1408 and 1409.  This is a core proceeding within the meaning of 28 U.S.C. §157.

C.    The statutory predicates for the Motion are Bankruptcy Code Sections 105, 363 and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004, 6006, 9014 and 9019.

D.    As evidenced by the affidavits of service filed with the Court, written notice of the Motion and the Sale Hearing was transmitted to:  (i) all entities known to have expressed an interest in the Sale or the Sale Assets; (ii) all entities known to have asserted any lien, Claim (defined below), interest or encumbrance in or upon any of the Sale Assets or the Assumed Contracts; (iii) all non-debtor parties to the Assumed Contracts or having an interest in the Assumed Contracts; (iv) all federal, state and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion, including the Internal Revenue Service [and the EPA]; (v) all non-residential real property lessors; (f)  the United States Attorney's office; (vi) the office of the United States Trustee; (vii) counsel for the Committee of Unsecured Creditors (the "Committee") appointed in these chapter 11 cases under 11 U.S.C. §1102 (and its counsel, if any); and (viii) counsel for Comerica Bank.

E.    Based upon the affidavits of service filed with the Court:  (i) notice of the Motion, the Bid Procedures, the Bid Procedures Order, the Sale Hearing and of Debtors' intention to assume and assign the Assumed Contracts, was adequate and sufficient under the circumstances of these chapter 11 cases and these proceedings and complied with the various applicable requirements of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure; and (ii)

3

reasonable opportunity to object and be heard with respect to the Motion and the relief requested therein was afforded to all interested persons.

F. Debtors provided notice of the Sale to each of the entities that expressed a bona fide interest in the Sale Assets and the Target Business Operations sought to be purchased by Buyer pursuant to the Purchase Agreement. Debtors and their professionals marketed the Sale Assets and conducted the sale process in accordance with the Bid Procedures. Based upon the record of these proceedings, all creditors and equity holders, all other interested parties-in-interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Sale Assets.

G. Subject to the entry of this Order, each Debtor (i) has full power and authority to execute the Purchase Agreement and the Transaction Documents, and the sale of the Sale Assets by Debtors has been duly and validly authorized by all necessary action of each Debtor, (ii) has all of the power and authority necessary to consummate the Transactions contemplated by the Purchase Agreement, (iii) has taken all company action necessary to authorize and approve the Purchase Agreement and the consummation by Debtors of the Sale. No consents or approvals, other than those expressly provided for in the Purchase Agreement or this Order, are required for Debtors to close the Sale and consummate the Transactions.

H. Emergent circumstances and sound business reasons exist for Debtors' sale of the Sale Assets pursuant to the Purchase Agreement. Entry into the Purchase Agreement and consummation of the Transactions constitute the exercise by Debtors of sound business judgment and such acts are in the best interests of Debtors, their estates, and all parties in interest. The Court finds that Debtors have articulated good and sufficient business reasons justifying the Sale of the

Sale Assets to Buyer. Such business reasons include, but are not limited to, the following: (i) the Purchase Agreement constitutes the highest or otherwise best offer for the Sale Assets; (ii) the Purchase Agreement and the Closing will present the best opportunity to realize the value of the Sale Assets and avoid decline and devaluation of Debtors' business; (iii) there is a substantial risk of deterioration of the value of the Sale Assets if the Sale is not consummated promptly; and (iv) the Purchase Agreement and the Closing will provide a greater recovery for Debtors' creditors than would be provided by any other presently available restructuring alternative.

I.      The Purchase Agreement and the Transactions were negotiated and have been and are undertaken by Debtors and Buyer at arms' length without collusion or fraud, and in good faith within the meaning of Bankruptcy Code Section 363(m). An auction was conducted in accordance with the Bid Procedures and after conclusion of the auction, Buyer was declared the highest or otherwise best bidder. The auction was conducted at arms' length and in good faith within the meaning of Bankruptcy Code Section 363(m). As a result of the foregoing, Debtors, and Buyer are entitled to the protections of Bankruptcy Code Section 363(m). Moreover, neither Debtors nor Buyer engaged in any conduct that would cause or permit the Purchase Agreement, the consummation of the Transactions or the assumption and assignment of the Assumed Contracts to be avoided, or costs or damages to be imposed, under Bankruptcy Code Section 363(n) or any other provision of the Bankruptcy Code.

J.      The Purchase Price was not controlled by an agreement between potential or actual bidders within the meaning of Bankruptcy Code Section 363(n). The Purchase Agreement was negotiated, proposed, and entered into by Debtors and Buyer without collusion, in good faith, and from arms' length bargaining positions. Neither Debtors nor Buyer have engaged in any conduct

5

that would cause or permit the Purchase Agreement or any part of the Transactions to be avoided under Section 363(n) of the Bankruptcy Code or any other provision of the Bankruptcy Code.

K.      The total consideration provided for the Sale Assets is the highest or otherwise best offer received by Debtors, and the Purchase Price constitutes (i) reasonably equivalent value under the Bankruptcy Code and Uniform Fraudulent Transfer Act, and (ii) fair consideration under the Uniform Fraudulent Conveyance Act.

L.      Buyer would not have entered into the Purchase Agreement and would not consummate the Transactions, thus adversely affecting Debtors, their estates, and their creditors, if the Sale of Sale Assets to Buyer and the assignment of the Assumed Contracts to Buyer was not free and clear of all liens, Claims (defined below) and encumbrances (other than the Assumed Liabilities).  A sale of the Sale Assets other than one free and clear of liens, Claims, and encumbrances (other than the Assumed Liabilities) would adversely impact Debtors' estates with less certainty than the Sale.  Therefore, the Sale contemplated by the Purchase Agreement is in the best interests of Debtors, their estates and creditors, and all other parties in interest.

M.      Debtors may sell the Sale Assets free and clear of all liens, Claims (defined below), and encumbrances (other than the Assumed Liabilities), because, with respect to each creditor asserting a lien, claim or encumbrance, one or more of the standards set forth in Bankruptcy Code Section 363(f)(1) — (5) has been satisfied. Those holders of liens, claims, and encumbrances who did not object or who withdrew their objections to the Sale or the Sale Motion are deemed to have consented to the Sale and the Sale Motion pursuant to Bankruptcy Code §363(f)(2). Those holders of liens, claims, and encumbrances who did object fall within one or more of the other subsections of Bankruptcy Code Section 363(f) and are adequately protected by either

6

having (i) their liens, Claims, and encumbrances attach to the cash proceeds of the Sale ultimately attributable to the property against or in which they assert a lien, Claim, or encumbrance with the same rights and priorities that they held against the Sale Assets, or (ii) their liens, Claims, or encumbrances remain unchanged by the Sale with the same rights and priorities that they held against the Sale Assets.

N.     Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assumed Contracts to Buyer in connection with the consummation of the Sale, and the assumption, assignment, and sale of the Assumed Contracts is in the best interests of Debtors, their estates, their creditors, and all parties in interest.  The Assumed Contracts being assigned to Buyer are an integral part of the Sale Assets being purchased by Buyer, and accordingly, such assumption, assignment and sale of Assumed Contracts are reasonable, enhance the value of Debtors' estates, and do not constitute unfair discrimination.

O.     Debtors have provided adequate assurance of cure of any default existing prior to the Closing under any of the Assumed Contracts, within the meaning of Section 365(b)(1)(A) of the Bankruptcy Code, and provided adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumed Contracts within the meaning of Bankruptcy Code Section 365(b)(1)(B). Buyer has provided adequate assurance of its future performance of and under the Assumed Contracts, within the meaning of Bankruptcy Code Section 365(b)(1)(C).  Those non-debtor parties to the Assumed Contracts, were given notice and opportunity to object to the Motion and are deemed to have consented pursuant to 11 U.S.C. §363(f)(2).

P.     Immediately prior to the entry of this Order, Buyer was not an "insider" or "affiliate" of any of Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or stockholders existed between Buyer and either of Debtors. Pursuant to the Purchase Agreement, Buyer is not purchasing all of Debtors' assets in that Buyer is not purchasing the Excluded Assets, and Buyer is not holding itself out to the public as a continuation of Debtors. The Transactions do not amount to a consolidation merger or *de facto* merger of Buyer and Debtors and/or Debtors' estates, there is not substantial continuity between Buyer and Debtors, there is no continuity of enterprise between Debtors and Buyer, Buyer is not a mere continuation of Debtors or Debtors' estates, and Buyer does not constitute a successor to Debtors or Debtors' estates. At the time of Closing, Buyer shall be deemed to have assumed only the Assumed Liabilities. Except for the Assumed Liabilities, Buyer's acquisition of the Sale Assets shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the Closing. Buyer's operation of the Sale Assets acquired from Debtors shall not be deemed a continuation of Debtors' business. The Court finds that Buyer would not have acquired the Sale Assets but for the foregoing protections against potential claims based upon "successor liability" theories.

Q.     The transfer of the Sale Assets to Buyer will be a legal, valid and effective transfer of the Sale Assets, and will vest Buyer with all of Debtors right, title and interest of in and to the Sale Assets, free and clear of (i) all encumbrances of any kind or nature whatsoever (other than the Assumed Liabilities), and (ii) all claims as defined in 11 U.S.C. §101(5), rights or causes of action (whether in law or in equity), obligations, demands, guarantees, contractual commitments, restrictions, interests and matters of any kind or nature whatsoever, whether arising prior to or subsequent to the commencement of these cases, and whether imposed by agreement,

8

understanding law, equity or otherwise (collectively, the "Claims"), other than the Assumed Liabilities.

R.     Time is of the essence in consummating the Sale. Accordingly, to maximize the value of Debtors' assets, it is essential that the sale of the Sale Assets occur within the time constraints set forth in the Purchase Agreement. Accordingly, there is cause to waive the stays contemplated by Federal Rules of Bankruptcy Procedure 6004 and 6006.

S.     Approval of the Purchase Agreement and assumption, assignment, and sale of the Assumed Contracts and consummation of the sale of the Sale Assets at this time are in the best interests of Debtors, their creditors, their estates, and all parties in interest.

T.     Buyer and Comerica Bank have all consented to the relief requested in the Motion, as modified by the terms of this Order.

ORDERED, ADJUDGED AND DECREED THAT:

1.     The Motion is granted in its entirety as it relates to the Purchase Agreement, the Sale and the Transaction.

2.     All objections and responses concerning the Motion as they relate to the Purchase Agreement, the Sale or the Transactions are resolved in accordance with the terms of this Order and as set forth in the record of the Sale Hearing and to the extent any such objection or response was not otherwise withdrawn, waived, or settled, is and all reservation of rights requested therein, are overruled and denied.

9

3. The Purchase Agreement, the Sale and the Transactions are approved and authorized in all respects except as otherwise provided herein.

4. The Purchase Price shall be paid by Buyer in accordance with the Purchase Agreement.

5. Debtors are authorized and directed to sell the Sale Assets to Buyer free and clear of all liens, Claims, encumbrances (other than the Assumed Liabilities) and other interests pursuant to 11 U.S.C. §363(f), with all such liens, Claims, encumbrances and other interests attaching only to the sale proceeds in the same validity, extent and priority as immediately prior to the Transaction, subject to any rights, claims and defenses of Debtors and other parties in interest.

6. The transfer of the Sale Assets, including the Perpetual Funds, to Buyer pursuant to the Purchase Agreement shall be, and hereby is deemed to be, a legal, valid and effective transfer of the Sale Assets, and vests with or will vest in Buyer all right, title and interest of Debtors in the Sale Assets, free and clear of (i) all encumbrances of any kind or nature whatsoever (other than the Permitted Encumbrances and the Assumed Liabilities), and (ii) all Claims other than the Assumed Liabilities, with any liens attaching to the sale proceeds in the same validity, extent and priority as immediately prior to the Transaction, subject to any rights, claims and defenses of Debtors and other parties in interest.

7. The consideration provided by Buyer for the Sale Assets under the Purchase Agreement shall be deemed for all purposes to constitute value and fair consideration under the Bankruptcy Code and any other applicable law, and the Sale may not be avoided, or costs or

damages imposed or awarded, under Section 363(n) of the Bankruptcy Code or any other provision of the Bankruptcy Code.

8.      Upon the Closing, all creditors, employees and equity holders of Debtors are permanently and forever barred, restrained and enjoined from (a) asserting any Claims or enforcing remedies, or commencing or continuing in any manner any action or other proceeding of any kind, against Buyer or the Sale Assets on account of any of the liens, Claims, interests and encumbrances (other than the Assumed Liabilities), or (b) asserting any Claims or enforcing remedies under any theory of successor liability, *de facto*, merger, or substantial continuity.

9.      The Transactions do not amount to a consolidation, merger or *de facto* merger of Buyer and Debtors and/or Debtors' estates, there is not substantial continuity between Buyer and Debtors, there is not continuity of enterprise between Debtors and Buyer, Buyer is not a mere continuation of Debtors and Debtors' estates, and Buyer does not constitute a successor to the Debtor or Debtors' estates.   Buyer shall be deemed to have not assumed any liabilities of Debtors, except for the Assumed Liabilities.   Except for the Assumed Liabilities, Buyer's acquisition of the Sale Assets shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the time of the Closing. Buyer's operation of the Sale Assets acquired from Debtors shall not be deemed a continuation of Debtors' business, and all "persons" (as defined in 11 U.S.C. §101(41))   are hereby enjoined from asserting against Buyer, or its successors or assigns, any claim or cause of action based upon the theory or "successor liability" merely because Buyer has acquired the Sale Assets.

10.     Buyer does not assume any liability with respect to any defined benefit pension plan, other than as may be specifically set forth in the Purchase Agreement.

11.     Upon the Closing, Buyer shall assume and agrees to pay, perform and otherwise discharge, the Assumed Liabilities, with such assumption of the Assumed Liabilities constituting a portion of the consideration paid by Buyer for the Sale Assets.

12.     The sale, assumption and assignment, and transfer of the Assumed Contracts, pursuant to the Purchase Agreement, are hereby approved pursuant to 11 U.S.C. §§363 and 365. Debtors are hereby authorized, effective only as of the Closing and in accordance with Bankruptcy Code Sections 365(b)(1) and (f)(2), to: (A) assume the Assumed Contracts; (B) sell, assign and transfer to Buyer each of the Assumed Contracts in each case free and clear of all liens, Claims, and encumbrances; and (C) execute and deliver to Buyer, such assignment documents as may be necessary to sell, assign and transfer the Assumed Contracts. Pursuant to the Purchase Agreement, Buyer shall be entitled to enjoy all rights and privileges under the Assumed Contracts.  The Assumed Contracts, upon assignment to Buyer, shall be deemed valid and binding, in full force and effect and in accordance with their terms.  Upon the Closing, in accordance with Bankruptcy Code Sections 363 and 365, Buyer shall be fully and irrevocably vested in all right, title and interest of each Assumed Contract.

13.     All defaults or other obligations or any default provisions of the kind specified in Bankruptcy Code Section 365(b)(2) shall be deemed cured by the payment or other satisfaction of the cure amounts, if any, associated with the Assumed Contract(s) (the "Cure Amounts"). Except for the Cure Amounts, if any, there are no other defaults existing under the Assumed Contracts.

14.     Subject only to the funding of the Cure Amounts by Buyer pursuant to the terms of the Purchase Agreement, Debtors shall pay or otherwise satisfy the Cure Amounts, if any, no later than the Closing.  The Cure Amounts shall be deemed the entire cure obligation due and owing under 11 U.S.C. §365.  Except for the obligations of Debtors to pay or otherwise satisfy the Cure Amounts, if any, each non-debtor party to an Assumed Contract is hereby forever barred, estopped, and enjoined, from assertion any other claim or breach that existed as of the Closing Date, whether declared or undeclared or known or unknown; and such non-debtor parties to the Assumed Contracts are also forever barred, estopped, and permanently enjoined from asserting against Buyer or Debtors any counterclaim, defense or setoff, or any other Claim, lien or interest, asserted or assertable against Debtors.

15.     Buyer has provided adequate assurance of its future performance of the Assumed Contracts and the proposed assumption and assignment of the Assumed Contracts satisfies in all respects the requirements under 11 U.S.C. §365.

16.     No sections or provisions of the Assumed Contracts that purport to (a) prohibit, restrict or condition Debtors' assignment of the Assumed Contracts, including, but not limited to, the conditioning of such assignment on the consent of the non-debtor party to such Assumed Contracts, (b) authorize the termination, cancellation or modification of the Assumed Contracts based on the filing of a bankruptcy case, the financial condition of Debtors or similar circumstances, or (c) provide for additional payments, penalties, charges or other financial accommodations in favor of the non-debtor thirty party to the Assumed Contracts upon the occurrence of the conditions set forth in subsections (a) and (b) above, shall have any force and effect with respect to the sale and assignment authorized by this Order, and such provisions constitute   unenforceable anti-assignment provisions under 11 U.S.C. §365(f) and/or are

otherwise unenforceable under 11 U.S.C. §365(f). The entry of this Order constitutes the consent of the non-debtor parties to the Assumed Contracts to the assumption and assignment of the Assumed Contracts to the extent not prohibited by applicable law. Further, there shall be no rent accelerations, assignment fees, increases or any other fees charged or chargeable to Buyer as a result of the assumption, assignment and sale of the Assumed Contracts.

17.     Nothing in this Order releases Debtors from their obligations under Bankruptcy Code Section 365 with respect to executory contracts or unexpired leases not yet assumed, assigned or rejected.

18.     Pursuant to Bankruptcy Code Section 365(k), Debtors and their estates are not liable for any breach of any Assumed Contract that occurs or arises after such assignment to and assumption by Buyer.

19.     Debtors are authorized to (a) execute, deliver, perform under, consummate and implement the Purchase Agreement (subject to the applicable closing conditions set forth in the Purchase Agreement), collectively with all additional instruments and documents that are contemplated under the Purchase Agreement (including the Transaction Documents), or may be reasonably necessary or desirable to implement the Purchase Agreement, and (b) take all further reasonable actions as may be requested by Buyer for the purpose of transferring the Sale Assets to Buyer or as may be necessary or appropriate to the performance of the obligations contemplated by the Purchase Agreement.

20.     Upon the entry of this Order, with respect to the Purchase Agreement, Buyer shall be entitled to protection under 11 U.S.C. §363(m). The Transactions are undertaken by Buyer in good faith, as that term is used in 11 U.S.C §363(m), and, accordingly, the reversal or

modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to Buyer, unless such authorization is duly stayed pending such appeal.

21.     No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale or the Transactions.  No brokers were involved in consummating the Sale or the Transactions, and no brokers' commissions are due to any "person" (as defined in 11 U.S.C. §101(41)) in connection with the Sale or the Transactions.

22.     Subject to the occurrence of the Closing Date and to the terms of the Purchase Agreement, this Order: (a) is and shall be effective as a determination that the Assumed Liabilities, all liens, Claims and encumbrances of any kind or nature whatsoever existing as to the Sale Assets prior to the Closing have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected; and (b) shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrar of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons (as defined by 11 U.S.C. §101(41)) who may be required by operation of law, the duties of their office, or contracts, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Sale Assets.  All entities described above in this paragraph are authorized and specifically directed to strike all recorded liens and mortgages, interests and encumbrances against the Sale Assets from their records, official and otherwise.

23.     As of the Closing, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Sale Assets or a bill of sale transferring good and marketable title in the Sale Assets to Buyer. Each and every federal, state and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Transactions.

24.     Each of Debtors' creditors is authorized and directed on or before the Closing to execute such documents and take all other actions as may be necessary to release its interests in or Claims against the Sale Assets, if any, as such interests or Claims may have been recorded or otherwise exist.  If any person, which has filed statements or other documents or agreements evidencing liens, mortgages, interests or encumbrances on or in the Sale Assets shall not have delivered to Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and mortgages, interests and encumbrances, and any other documents necessary for the purpose of documenting the release of all liens, mortgages, interests and encumbrances which the person has or may assert with respect to the Sale Assets, Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person with respect to the Sale Assets.

25.     Any and all assets that are included in the Sale Assets in the possession or control of any person, including, without limitation, any vendor, supplier or employee of Debtors, shall be transferred to Buyer free and clear of liens, Claims, interests and encumbrances (other than the Assumed Liabilities) and shall be delivered by such person upon demand by Buyer.

26.     This Order and the Purchase Agreement shall be binding in all respects upon all creditors and equity holders of any of Debtors, all non-debtor parties to the Assumed Contracts, all successors and assigns of Debtors and their affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries appointed in Debtors' bankruptcy cases or upon a conversion to Chapter 7 under the Bankruptcy Code, and the Purchase Agreement shall not be subject to rejection or avoidance under any circumstances.

27.     The Purchase Agreement, the Transactional Documents and any related agreements, documents, or other instruments may be modified amended, or supplemented by the parties thereto, in a writing signed by the parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on Debtors' estates.

28.     This Court retains jurisdiction to enforce and implement the terms and provisions of this Order and the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and of any agreements executed in connection therewith in all respects, including, but not limited to: (a) resolve any disputes arising under or related to the Purchase Agreement, except as otherwise provided therein; and (b) interpret, implement and enforce the provisions of this Order.

29.     The failure specifically to include any particular provision of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that that Purchase Agreement be authorized and approved in its entirety. Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

30.     Notwithstanding the provisions of Federal Rules of Bankruptcy Procedure 6004(h) and 6006(d) and Federal Rules of Civil Procedure 62(a), this Order shall not be stayed, but shall be effective and enforceable immediately upon entry.

31.     Nothing in this Order or the Purchase Agreement releases, nullifies, precludes, or enjoins the enforcement of any liability to a governmental unit under policy or regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order.

32.     Nothing contained in any Chapter 11 Plan confirmed in these Chapter 11 cases or any Order of the Court confirming such Plan or any other Order entered in these Chapter 11 cases (or any subsequent Chapter 7 case(s)) shall conflict with or derogate from the provisions of the Purchase Agreement or the terms of this Order.

DETROIT 22049-370 1259557v1